**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| IGNITE INTERNATIONAL, LTD., *Plaintiff*, v. JOHN A. SQUIRES, *et al.*, *Defendants*. | ) | Case No. 1:24-cv-397 (PTG/LRV) |

# MEMORANDUM OPINION

This matter comes before the Court on the parties' cross motions for summary judgment. Dkts. 43, 69. Plaintiff Ignite International, Ltd. ("Ignite") seeks to reverse the decision of the U.S. Patent and Trademark Office ("USPTO") Trademark Trial and Appeal Board ("TTAB") that Plaintiff's proposed "IGNITE mark" is ineligible for registration. Defendants USPTO and John A. Squires, Director of the USPTO, concluded that the "IGNITE mark" is likely to be confused with a prior-registered "IGNITE THE NITE" mark owned by Sazerac Brands, LLC. For the reasons that follow, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

## I. Factual Background

Plaintiff Ignite is a proclaimed lifestyle brand that filed a federal trademark application pursuant to 15 U.S.C. § 1015(b), Section 1(b) of the Lanham Act, for an "IGNITE mark." Dkt. 105-1 ¶¶ 2, 19. The application, U.S. Application No. 88201639, sought to register the IGNITE mark in Class 33: "alcoholic beverages, namely vodka and distilled blue agave liquor."[1] A0513.

[1] Blue agave liquor is also known as tequila.

The IGNITE mark consists of a goat skull with horns and the word "IGNITE" centered over the skull as pictured below. A0001.

IGNITE

The "IGNITE THE NITE" mark consists of the three words in standard characters as seen below. A0352.

IGNITE THE NITE

Its registration, U.S. Registration No. 3288144, is in Class 33: "whiskey-based liqueurs" and has been active since December 7, 2010. *Id.* The registration contains no limitations on specific trade channels of distribution. *Id.*

After the USPTO issued a Final Refusal to register the IGNITE mark, Ignite filed an appeal to the TTAB. *Id.* ¶¶ 25, 26. On January 12, 2024, the TTAB issued its decision to refuse registration of the IGNITE mark because it has a likelihood of confusion with the IGNITE THE NITE mark in Class 33: "whiskey-based liqueurs." A1092.

On March 13, 2025, Ignite filed the present action requesting this Court to reverse the TTAB decision and declare that the IGNITE mark does not lead to a likelihood of confusion with the IGNITE THE NITE mark. *See* Dkt. 1. The parties each filed motions for summary judgment. Dkts. 43, 69. On December 3, 2025, the Court heard oral argument on the motions. At the hearing, the Court noted Defendants' assertion that Ignite was relying on portions of the record that were stricken by Magistrate Judge Lindsey R. Vaala's Order. *See* Dkt. 68. The Court ordered the parties to meet and confer and Ignite to redact and re-file its briefing materials in accordance with Magistrate Judge Vaala's Order. Ignite submitted its documents with the redactions confirmed by

Defendants. Dkts. 104, 105. On March 27, 2026, the Court issued an order granting summary judgment in favor of Defendants. Dkt. 106.

## II. Legal Standard

### A. Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Generally, to survive a Rule 56 motion for summary judgment, a party must go beyond the pleadings and cite to its own affidavits, depositions, answers to interrogatories, and/or admissions on file to show that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To preclude summary judgment, a fact dispute must be genuine and material; that is, the factual dispute must be capable of affecting the substantive outcome of the case, and be supported by sufficient admissible evidence that a reasonable trier of fact could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

When considering summary judgment, a court must "always accept the facts in the light most favorable to the nonmoving party." *Williamson v. Stirling*, 912 F.3d 154, 178–79 (4th Cir. 2018). The court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015). Moreover, where "cross-motions for summary judgment are before a court, the court examines each motion separately." *T.H.E. Ins. Co. v. Davis*, 54 F.4th 805, 818 (4th Cir. 2022) (quoting *Fusaro v. Howard*, 19 F.4th 357, 366 (4th Cir. 2021)). "In considering each motion, the Court will resolve any factual disputes and 'competing, rational inferences' in the light most favorable to the opposing party." *Reynolds v. USAA Life Ins. Co.*, 678 F. Supp. 3d 736, 740 (E.D. Va. 2023), *aff'd*, 2024 WL 2795185 (4th Cir. May 31, 2024) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

**B. Standard of Review**

An applicant who is "dissatisfied with the decision" of the TTAB can seek "remedy by a civil action" in district court. 15 U.S.C. § 1071(b). "The court may adjudge that an applicant is entitled to a registration upon the application involved, that a registration involved should be canceled, or such other matter as the issues in the proceeding require, as the facts in the case may appear." *Id.* During district court review, a plaintiff may introduce evidence not presented to the USPTO. *United States Pat. & Trademark Off. v. Booking.com B. V.*, 591 U.S. 549, 555 (2020).

When new evidence is introduced in a § 1071(b) action "on a disputed fact question, a *de novo* finding will be necessary to take such evidence into account together with the evidence before the board." *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 156 (4th Cir. 2014) (quoting *Kappos v. Hyatt*, 566 U.S. 431, 444 (2012)). Where no new evidence is presented at all or with respect to certain facts found by the Board, the Court "must [instead] apply the APA's substantial evidence standard to Patent Office fact findings." *Dome Pat., L.P. v. Rea*, 59 F. Supp. 3d 52, 78–79 (D.D.C. 2014).

Here, Plaintiff has presented new evidence to support its argument that there is no likelihood of confusion between the marks. Accordingly, the Court proceeds to review the TTAB decision *de novo*.[2]

**III. Analysis**

No trademark shall be refused registration by the USPTO unless it so resembles a registered mark as to be likely to cause confusion. 15 U.S.C. § 1052(d). The Fourth Circuit considers the

---

[2] Defendants assert that the Court must review each individual factor under the substantial evidence standard of review if there is no new evidence presented for that factor. Dkt. 71 at 13. Plaintiff asserts that the entire record is reviewed *de novo* because the parties were able to conduct additional discovery. Dkt. 105-1 at 17–18. The Court proceeds with *de novo* review because there is new evidence presented.

following nine factors for determining whether there is a likelihood of confusion between two marks:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the mark holders; (5) the similarity of advertising used by the mark holders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Swatch AG*, 739 F.3d at 158 (quoting *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). "These nine factors serve as a guide rather than a 'rigid formula for infringement'; they are not all of equal importance and not all factors are relevant in every case."[3] *Id.* The Court addresses each factor in turn.

**1. Strength or Distinctiveness of the Senior Mark**

In a registration action, the senior mark is the pre-existing registered mark, which is the IGNITE THE NITE mark in this case. *See Seacret Spa Int'l v. Lee*, No. 1:15-cv-405, 2016 WL 880367, at *3 (E.D. Va. Mar. 8, 2016). Mark strength is referred to as "distinctiveness," which has four levels: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful. *George*, 575 F.3d at 393–94. Generic marks "describe[] a product in its entirety" and are "never entitled to trademark protection." *Id.* at 394. Descriptive marks "define a particular characteristic" of a product "in a way that does not require any exercise of the imagination." *Id.* They are not inherently distinctive and therefore "require a showing of secondary meaning before they receive trademark protection." *Id.* Suggestive marks do not describe a product's features but suggests them, which requires some imagination to associate the mark with the product. *Id.* For this reason,

---

[3] The likelihood of confusion standard for purposes of registration is the same standard as likelihood of confusion for purposes of infringement. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015).

they are inherently distinctive and do not require a showing of secondary meaning before receiving trademark protection. *Id.* Arbitrary or fanciful marks are inherently distinctive because they are either made-up words or common words that do not have a connection with the actual product. *Id.*

Under 15 U.S.C. § 1065, a registered mark that has been in use for five consecutive years is incontestable. An incontestable mark may not be attacked as merely descriptive. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985).

Defendants argue that because the IGNITE THE NITE mark was registered without a claim of acquired distinctiveness it is presumed to be inherently distinctive for the goods specified in the certificate. Dkt. 71 at 29; A352; *see* 15 U.S.C. § 1057(b). And, because the senior mark's registration is over five years old, it is incontestable under 15 U.S.C. § 1065. These facts support the mark's strength and its immunity from challenges based on descriptiveness.

Plaintiff concedes that the mark is incontestable but argues that the incontestable mark is still a weak descriptive slogan. Dkt. 105-1 at 20–21. Though Plaintiff characterizes the IGNITE THE NITE mark as a weak "descriptive" slogan, the Court does not consider descriptiveness as an argument against the mark's validity. *See Park 'N Fly*, 469 U.S. at 205. Instead, the question for the Court is whether the IGNITE THE NITE mark, though valid, is relatively weak and therefore entitled to a narrower scope of protection in assessing the likelihood of confusion.

Defendants argue that the senior mark is afforded the full protection because its registration covers any depiction of IGNITE THE NITE, including those that the owner does not currently use. Dkt. 71 at 33. The Court agrees. Plaintiff fails to submit sufficient evidence of third-party use of IGNITE THE NITE that necessarily weakens the distinctiveness of the senior mark. *See* Dkt. 105-1 (redactions). As such, this factor weighs against registration.

**2. Similarity of the Marks**

In considering the similarity between two marks, courts focus on "whether there exists a similarity in sight, sound, and meaning which would result in confusion" between the two marks at issue. *Combe Inc. v. Dr. Aug. Wolff GmBH & Co. KG Arzneimittel*, 382 F. Supp. 3d 429, 456 (E.D. Va. 2019) (quoting *George*, 575 F.3d at 383). It is not a side-by-side comparison, rather the marks are considered '"in light of the fallibility of memory."' *In re St. Helena Hosp.*, 774 F.3d 747, 751 (Fed. Cir. 2014) (quoting *San Fernando Elec. Mfg. Co. v. JFD Elecs. Components Corp.*, 565 F.2d 683, 685 (C.C.P.A. 1977)). Courts compare whole words, not parts. *Swatch AG*, 739 F.3d at 159. And "courts give the dominant part of a mark more weight when assessing similarity." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 317 (4th Cir. 2017).

Here, both marks use the term "IGNITE." The term is the only word in Plaintiff's mark and the first word of the IGNITE THE NITE senior mark. Plaintiff downplays this overlap, while Defendants assert that this overlap makes the marks confusingly similar. *See* Dkt. 105-1 at 24; Dkt. 71 at 25. The word "IGNITE" is clearly the dominant, or at least, the prominent part of both marks. The sound and spelling (in all capital letters) are exactly the same. Plaintiff argues that the IGNITE THE NITE mark is a slogan and therefore not similar to the IGNITE mark. The Court is unpersuaded by this argument. Because the sight and sound of the marks is so similar, this factor weighs against registration.

**3. Similarity of the Goods**

In reviewing the similarity of the goods sold in connection with the marks, the Fourth Circuit has explained that "the goods in question need not be identical or in direct competition with each other" to be deemed similar. *Combe*, 382 F. Supp. 3d at 429 (quoting *George*, 575 F.3d at 383). For this factor, courts focus on "whether the public is likely to attribute the products . . .

to a single source." *Id.* at 458 (quoting *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 244 (4th Cir. 2007)).

Plaintiff argues that the goods are not similar because its IGNITE mark is for vodka and tequila, while the IGNITE THE NITE mark is for whiskey-based liqueurs. Dkt. 105-1 at 25. Defendants point to examples in the record where a single mark's trademark registration is used on vodka, tequila, and whiskey-based liqueurs. Dkt. 71 at 18; A0546 (same mark used on "agave spirits; Vodka; Whiskey"); A0551 (same mark used on "Liqueurs; blue agave liquor; Vodka; Whiskey"); A0559 (same mark used on "Liqueurs; Vodka; Whiskey; Distilled agave liquor"). Further, Defendants note that many cocktail recipes are made with whiskey-based liqueurs along with or substituted for either vodka or tequila. Dkt. 83 at 4. The fact that recipes interchange whiskey with vodka or tequila undercuts Plaintiff's argument that these are not similar. The overlap increases the likelihood that a consumer would believe the goods originate from the same source. Thus, in considering whether the marks are likely to be attributed to a single source, the Court finds that these facts support Defendants' position.

Additionally, Plaintiff offers an example where the USPTO has registered two marks for wine under class 33 that both use the word "honor" as evidence to support its argument. Dkt. 105-1 at 1–2. Plaintiff questions "how the USPTO allowed [registration of two marks with the word "honor"] for identical goods but not allow [two similar marks] to be registered for different goods" in the same class. *Id.* However, the question is not whether the public is likely to confuse separate goods but whether the public is likely to attribute separate goods to the same source. *See Recot, Inc. v. Becton*, 214 F.3d 1322, 1329 (Fed. Cir. 2000) (analyzing whether the origin of the goods is similar in the mind of the consuming public).

The evidence here supports the conclusion that it is likely that both products would be attributed to a single source. Thus, this factor weighs against registration.

**4. Similarity of the Facilities Used**

In considering whether the goods use similar facilities, courts examine "how and to whom the respective goods of the parties are sold," which boils down to "whether 'both products [are] sold in the same 'channels of trade.'" *Combe*, 382 F. Supp. at 459 (quoting *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 155 (4th Cir. 2012)). In doing so, similarities in "channels of trade must be analyzed based on the channels of trade contemplated by the application." *Seacret Spa*, 2016 WL 880367, at *5. "Any limitations on usage must appear in the application, and 'if an application does not delimit any specific trade channels of distribution, no limitation will be applied.'" *Id.* (quoting *B & B Hardware*, 575 U.S. at 143).

Here, the IGNITE THE NITE registration has no limitations on specific trade channels of distribution. *See* A352. Thus, the Court must presume that the IGNITE THE NITE mark covers all channels of trade, including the channels of trade for the IGNITE mark. Simply put, the channels of trade are similar. As such, this factor weighs against registration.

**5. Similarity of Advertising**

As with the similarity of facilities, the similarity in advertising factor in a "registration proceeding deals with the mark as described and limited in the application." *Combe*, 382 F. Supp. 3d at 459. As stated earlier, the IGNITE THE NITE registration does not limit the particular trade channels, so no limitation will be applied to its advertising and marketing strategy. Plaintiff asserts that it offers a premium product for those with a "high-end lifestyle," while the IGNITE THE NITE product does not. Dkt. 105-1 at 27–28. However, that assertion does not support its argument because the mark is not limited by its advertising strategy. *See Seacret Spa*, 2016 WL

880367, at *6 ("Plaintiff could adopt a more [high-end] advertising strategy tomorrow and remain within the four corners of the application."). Thus, this factor weighs against registration.

**6. Intent**

In trademark infringement cases, the defendant's intent is sometimes a "major factor." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1535 (4th Cir. 1984). However, intent is "rarely relevant to the likelihood of confusion in registration proceedings." *Seacret Spa*, 2016 WL 880367, at *6. Plaintiff avers that there is no evidence of its intent to cause consumer confusion. Dkt. 105-1 at 28. Either way, a "good faith belief that a subsequently-adopted mark will not lead to confusion . . . is no defense if a court finds actual or likelihood of confusion." *Pizzeria Uno*, 747 F.2d at 1535. The Court gives this factor minimal weight.

**7. Actual Confusion**

Evidence of actual confusion is often considered an important factor in a likelihood of confusion analysis. *George*, 575 F.3d at 398. And, the "absence of any evidence of actual confusion over a substantial period of time . . . creates a strong inference that there is no likelihood of confusion." *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 269 (4th Cir. 2006). However, courts have held that a lack of evidence of actual confusion should be taken with a "note of caution" in reviewing *ex parte* registration cases such as the case at bar. *Seacret Spa*, 2016 WL 880367, at *6. This is because courts place little weight on a plaintiff's claim that there is no evidence of actual confusion when reporting examples of actual confusion would be to their detriment. *Id.*

Here, Plaintiff argues that evidence shows the lack of any instances of actual confusion despite both marks co-existing in the marketplace. Its expert, Rhonda J. Harper, produced customer surveys and declarations to support Plaintiff's conclusion that there is no actual

confusion. From the survey results, Ms. Harper opined that there is no likelihood of confusion between the sources of each mark. Dkt. 105-1 ¶ 39. Ms. Harper offered the declarations to show that, in various ways, some customers do not confuse the marks or their sources. *Id.* ¶¶ 43–44. Plaintiff also claims that the IGNITE THE NITE mark holder has not produced evidence of actual confusion in similar litigation.

In rebuttal, Defendants assert that Plaintiff's expert used flawed methodologies and should be excluded under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702. Dkt. 71 at 34. Defendants argue that the IGNITE THE NITE mark holder has not exercised the full scope of its rights which, per its registration, covers any depiction of its mark. Dkt. 71 at 33.

As to the admissibility of Plaintiff's expert, the Court finds that the evidence is admissible but there are limitations on the value of the evidence. Both parties' substantive arguments may be true. Plaintiff's evidence may suggest limited actual confusion, while the mark holder remains entitled to the full protection afforded by its registration, which reduces the value of Plaintiff's evidence. Although the absence of actual confusion can support an inference against a likelihood of confusion, this registration case also concerns prospective confusion based on the full scope of the mark holder's registration. Accordingly, the Court concludes that this factor modestly weighs in favor of registration.

**8. Quality of Defendant's Product**

This factor applies in "situations involving the production of cheap copies or knockoffs of a competitor's trademark-protected goods." *George*, 575 F.3d at 383 (quoting *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 467 (4th Cir. 1996)). The parties agree that this factor is not probative in this case. The Court concurs.

**9. The Sophistication of the Consuming Public**

"Barring an unusual case, buyer sophistication will only be a key factor when the relevant market is not the public at-large." *Sara Lee*, 81 F.3d at 467. The parties agree that the goods in this case are marketed to the general public. As such, this factor is not relevant to the Court's analysis.

## IV. Conclusion

For the reasons stated above, the Court finds that the strength of the senior mark, the similarity of the two marks, the similarity of the goods, and the similarity of the facilities and marketing factors all weigh against registration. The actual confusion factor modestly weighs in favor of registration but does not overcome the factors that weigh against registration. Therefore, the Court grants Defendants' Motion for Summary Judgment.

Entered this 10th day of September, 2026.
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge